UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JUAN J. AREVALO,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY;<br><br>　　　　　Defendant. | 4:16-CV-04173-KES<br><br><br>MEMORANDUM OPINION AND ORDER REVERSING THE DECISION OF THE COMMISSIONER |

Plaintiff, Juan J. Arevalo, seeks review of the decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits (SSDI) under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382. The Commissioner opposes the motion and urges the court to affirm the denial of benefits. For the following reasons, the court reverses the decision of the Commissioner.

**PROCEDURAL HISTORY**

Arevalo filed an application for SSDI and SSI on December 6, 2013, alleging disability since December 31, 2008. AR 70.[1] The Commissioner denied his claim initially on May 19, 2014, and upon reconsideration on August 29, 2014. AR 124, 132. Arevalo then appeared with counsel before Administrative

---

[1] Arevalo later amended his disability onset date to January 31, 2012. AR 43-44, AR 237.

Law Judge (ALJ) Hallie Larsen at an administrative hearing on October 22, 2015. *See* AR 36 (transcript of hearing). The ALJ issued an opinion affirming the denial of benefits on December 4, 2015. AR 18. The Appeals Council denied Arevalo's request for review on October 31, 2016. AR 1. Thus, Arevalo's appeal of the Commissioner's final decision is properly before the court under 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Arevalo was born March 26, 1972. AR 199. At the time of his hearing before the ALJ, Arevalo was 43 years old. AR 46. Arevalo completed two years of school in Guatemala, and he finds reading and writing very difficult in both English and Spanish. *Id.* He fled Guatemala as a political refugee and is a legal permanent resident of the United States. AR 58, 206. At his administrative hearing, Arevalo explained that his employment history included jobs in construction and truck driving, but he had to discontinue his most recent job as a truck driver because of his ongoing back pain following back surgery. AR 46-47. He claims he can no longer do construction work because it involves too much heavy work. AR 53. Arevalo claims he has been unable to work since June or July of 2012. AR 46.

On September 2, 2008, Arevalo injured his lower back, which caused radiating pain in his left leg. AR 494. At the referral of Dr. Ferrie, Arevalo's treating physician, Dr. Fox performed surgery on Arevalo's back on December 2, 2008. AR 569. Since his surgery, Arevalo has been treated by several doctors, participated in physical therapy, and taken numerous pain

2

medications. Arevalo was initially apprehensive to try cortisone injections (AR 455), but he did receive an epidural steroid injection on August 18, 2014, which only provided pain relief for approximately two weeks before the pain came back worse. AR 49, 533.

Arevalo claims he continues to suffer from the following impairments: back injury, left leg numbness, neck and shoulder pain, problems using his arms and hands, and poor mood resulting from his chronic back pain. AR 245, 256, 260. There is also some indication that he suffers from depression. AR 57.

## ADMINISTRATIVE HEARING

During the administrative hearing, the ALJ heard testimony from Arevalo and Tom Addett, a vocational expert. Arevalo, represented by counsel at the hearing, testified about his minimal education, work experience as a truck driver and in construction, and how it is difficult for him to continue working due to his back pain. AR 46. Since his back surgery, Arevalo attempted physical therapy but reports this did not help with the pain. AR 49.

Arevalo testified that he can sit for about seven to eight minutes at a time, and he must constantly move side to side to tolerate the pain while sitting. AR 50. He can comfortably stand up without pain for five to ten minutes. *Id.* And while he attempts to walk a mile every two days, walking causes him a lot of pain and forces him to lay or sit down and take pain medication. *Id.* He is also able to sleep for only about four hours a night. AR 58. When asked how much weight he can lift, Arevalo was unsure because he

3

has not tried to lift anything other than coffee cups or plates since his back surgery. AR 50.

While he took prescribed opioids for his back pain for a period of time, Arevalo stated that he no longer takes them because he knows people become addicted to opioids. AR 56. At the time of his administrative hearing, Arevalo was taking medications prescribed by Dr. Ferrie, including Methocarbamol for muscle spasms and Amitriptyline. *Id.* He would take Tylenol if he could afford to buy it. *Id.* Arevalo reported sleep disruption and dizziness as side effects of the pain medication he has been prescribed. AR 48.

Arevalo testified that he does bathe, dress, and feed himself, and he can cook his own meals. AR 52. He also sometimes watches his son, but he cannot play with him because of his back pain. AR 53. He further testified that he can no longer fish because he cannot throw a fishing line and he can no longer play soccer because he cannot run. *Id.*

In response to the hypothetical question posed by the ALJ, Addett testified that someone with Arevalo's impairments could not perform his past work but could perform other occupations that exist in the national economy. AR 60-61. Specifically, Addett listed positions such as a small products assembler, which is light work at the unskilled level, a final assembler and a preparer, which are sedentary, unskilled jobs. AR 61-63. In response to the second hypothetical question posed by the ALJ, Addett testified that someone with Arevalo's impairments could also perform occupations such as the final assembler and the preparer, as well as a lens inserter position. AR 63.

**ALJ DECISION**

Using the five-step analysis associated with an application for social security benefits, the ALJ denied Arevalo's claim on December 4, 2015. AR 28. In Step One, the ALJ found that Arevalo has not engaged in substantial gainful activity since January 31, 2012, the amended onset date. AR 20. In Step Two, the ALJ concluded that Arevalo has the following severe impairments: degenerative disk disease of the lumbar spine, status post fusion of L4-5, and obesity. *Id.* The ALJ also found that while Arevalo had mild degenerative changes in his left ankle and osteophytes at C4-5, C5-6, and C6-7 in his neck, these impairments only cause minimal limitations on Arevalo's ability to perform basic work activities, and thus they are non-severe impairments. AR 21. Finally, the ALJ found that Arevalo's medically determinable mental impairment of depression was also non-severe. *Id.*

At Step Three, the ALJ found that Arevalo does not have an impairment, or combination of impairments, that meets or equals the severity required under 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22. In Step Four, the ALJ concluded that Arevalo cannot perform his past relevant work, but found that he has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).[2] AR 22, 27. In Step Five, the ALJ found

---

[2] The ALJ found Arevalo "can lift 10 pounds frequently and 20 pounds occasionally; stand and/or walk for 4 out of 8 hours with normal breaks; sit for 6 out of 8 hours with normal breaks; can never climb ropes, ladders, or scaffolds; can occasionally climb ramps and stairs; and can occasionally stoop, kneel, crouch and crawl." AR 22.

there are jobs in the national economy that Arevalo can perform. AR 27. Thus, the ALJ concluded that Arevalo is not disabled under the Social Security Act.

## STANDARD OF REVIEW

The court must uphold the ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). " 'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the conclusion.' " *Teague*, 638 F.3d at 614 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). When reviewing the record, "the court 'must consider both evidence that supports and evidence that detracts from the Commissioner's decision.' " *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)). If the Commissioner's decision is supported by substantial evidence in the record as a whole, the court may not reverse it merely because substantial evidence also exists in the record that would support a contrary position or because the court would have determined the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

The court also reviews the Commissioner's decision to determine if an error of law has been committed, which may be a procedural error, the use of an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). Issues of law are

reviewed de novo with deference accorded to the Commissioner's construction of the Social Security Act. *Id.* (citing *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008)).

**THE FIVE STEP PROCEDURE FOR DISABILITY DETERMINATIONS**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(3)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). An ALJ must apply a five-step procedure when determining if an applicant is disabled. *Smith v. Shalala*, 987 F.2d. 1371, 1373 (8th Cir. 1993). The steps are as follows:

**Step One**: Determine whether the applicant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b).

**Step Two**: Determine whether the applicant has an impairment or a combination of impairments that are severe. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

7

**Step Three**: Determine whether any of the severe impairments identified in Step Two match the listing in Appendix 1. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d).

**Step Four**: Considering the applicant's RFC, determine whether the applicant can perform any past relevant work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 416.920(e).

**Step Five**: Determine whether any substantial gainful activity exists in the national economy that the applicant can perform. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

## DISCUSSION

Arevalo urges the court to reverse the ALJ's decision for the following reasons: (1) the ALJ's RFC determination is not supported by substantial evidence; (2) the ALJ failed to properly determine whether Arevalo met the requirements of Listing 1.04; (3) the ALJ failed to properly evaluate Arevalo's credibility; and (4) the ALJ's hypothetical question to the vocational expert failed to include all limitations supported by the record. Docket 14 at 1. The court will address these arguments in the order of the five-step procedure outlined above. Arevalo also requests the court to remand the case with instructions for the Commissioner to award benefits. *Id.* at 34.

**I.    Step Three**

In step three, the ALJ must determine whether the claimant's severe impairment or impairments are such that a finding of disability is appropriate. *See* 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's severe impairments,

individually or in combination, satisfy the requirements of a listing in Appendix 1 of Subpart P in 20 C.F.R. Part 404 (Appendix 1), then "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

The ALJ found that Arevalo does not suffer from an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in Appendix 1. AR 22. Specifically, the ALJ concluded that Arevalo's condition does not meet the requirements in Listing 1.04 "because there is no evidence of nerve root compression characterized by a neuro-anatomic distribution of pain, motor loss accompanied by sensory or reflex loss; or spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." *Id.* Arevalo challenges the ALJ's findings under Listing 1.04, Subsection A. *See* Docket 14 at 26-27.

Under the Musculoskeletal category of impairments, Listing 1.04 encompasses:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), [that result] in compromise of a nerve root (including the cauda equine) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Part 404, Subpart P, App. 1.

9

While finding that Arevalo had degenerative disc disease, the ALJ concluded that Arevalo did not meet all of the requirements in Appendix 1, Listing 1.04, Subsection A. The ALJ's conclusory analysis consists of one sentence without any citation to the medical evidence in the record. S*ee* AR 22. Thus, the ALJ's brief conclusion regarding whether Arevalo met the requirements in Listing 1.04 makes it "practically impossible for a reviewing court to analyze" whether the ALJ's reasoning is supported by substantial medical evidence. *Miller v. Colvin*, 114 F. Supp. 3d 741, 775 (D.S.D. 2015). The court will not speculate as to the ALJ's reasoning. *Collins v. Astrue*, 648 F.3d 869, 872 (8th Cir. 2011). On remand, however, the ALJ should provide a more thorough analysis regarding whether Arevalo's degenerative disc disease meets each of the requirements of Listing 1.04, Subsection A.

## II. RFC determination

In order to complete step four, the Commissioner must determine the claimant's RFC, which is the most the claimant can do despite the claimant's mental and physical limitations. *Brown v. Barnhart*, 390 F.3d 535, 538-39 (8th Cir. 2004) (citing 20 C.F.R. § 404.1545(a)(1)). The claimant's RFC is determined based on all relevant evidence in the record, including medical records, observations of treating physicians, and the individual's own description of his limitations. *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006). But the ALJ's finding "must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

In determining Arevalo's RFC, the ALJ considered Arevalo's symptoms and whether they were consistent with the objective medical evidence, as well as the opinion evidence of several treating physicians. AR 22-27. Arevalo argues that the ALJ's RFC determination was not supported by substantial evidence. He contends that it was improper for the ALJ to give Dr. Ferrie and Dr. Vanderpol's opinions little weight and the ALJ failed to address Arevalo's non-severe impairments in the RFC analysis.

### A.   Dr. Ferrie's Opinion

Arevalo argues that it was improper for the ALJ to give "limited weight" to the opinion of Dr. Ferrie, Arevalo's treating physician. Docket 14 at 19. Specifically, Arevalo contends that the ALJ misunderstood the form that Dr. Ferrie completed and thus the ALJ should have included Dr. Ferrie's opinion when determining Arevalo's RFC. *Id.* In response, the Commissioner argues that the ALJ properly determined that Arevalo had "the RFC to perform a reduced range of light work with additional exertional and postural restrictions." Docket 15 at 3.

Dr. Ferrie completed a Medical Source Treatment form (MSS) in June 2014. AR 450-453. In giving Dr. Ferrie's opinion little weight—despite his role as the treating physician of Arevalo—the ALJ noted how Dr. Ferrie treated Arevalo for his physical symptoms, but the MSS encompassed mental limitations. AR 25-26. The Commissioner argues that this MSS "clearly was intended to be completed by a mental health professional and to address only

an individual's mental impairments and the symptoms and limitations from those mental impairments." Docket 15 at 6-7.

There must be a "principled reason" for an ALJ to reject a MSS, which is considered objective medical evidence. *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (citing *Burress v. Apfel*, 141 F.3d 875, 879 (8th Cir. 1998)). An ALJ's decision to discount a treating physician's MSS has been upheld by the Eighth Circuit when the listed limitations "stand alone" and are not mentioned elsewhere in the medical records or supported by objective testing. *Id.* (citing *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001)).

"The opinions of the claimant's treating physicians are entitled to controlling weight if they are supported by and not inconsistent with the substantial medical evidence in the record." *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004). "Such opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data." *Id.* at 805-06. In order for the court to find that substantial evidence supports the ALJ's decision to give limited weight to a treating physician, it must find that the ALJ provided "good reasons" for allocating such limited weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

Additionally, SSR 96-2p provides that:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically accepted clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the

> opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996).

The court finds that the ALJ improperly construed Dr. Ferrie's MSS strictly as a mental health impairment form. *See* AR 25. First, according to the Disability Benefits Center, a MSS is "a statement from [the claimant's] doctor or another health care professional regarding [the claimant's] medical or mental health impairments and the impact they have on" the claimant's work related activities. *See* www.disabilitybenefitscenter.org/glossary/medical-source-statement. While it can be used for mental impairments, the form is often used to describe a claimant's physical impairments as well. In fact, the particular form used by Dr. Ferrie says it is to be filled out by the claimant's "Treating Physician or Mental Health Provider." AR 450. While there is a section titled, "Mental Abilities and Aptitude Needed to Do Unskilled Work," (AR 451), Dr. Ferrie also assessed how Arevalo's chronic pain affected his ADLs and social functioning. AR 452. His treatment records from the very next day—when he treated Arevalo for his back pain—discussed how he spent time putting together Arevalo's disability paperwork. AR 457. Dr. Ferrie's use of the MSS, during a medical exam of Arevalo specifically for his back pain (*see* AR 457), appears to address Arevalo's physical limitations from his back pain.

An ALJ must "make every reasonable effort to recontact [treating] sources for clarification when they provide opinions on issues reserved to the

13

Commissioner and the bases for such opinions are not clear . . . ." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). If the ALJ was confused by Dr. Ferrie's form, the ALJ should have contacted him for further clarification instead of giving his opinion "little weight" without further discussion as to why. Thus, construing Dr. Ferrie's form solely as a mental limitation opinion was not a "good reason" to give the opinion of Arevalo's long-term treating physician little weight.

In addition to taking issue with the form Dr. Ferrie filled out for Arevalo, the ALJ gave little weight to Dr. Ferrie's opinion because "the opinion is highly inconsistent with the claimant's exam findings, treatment history, and the record as a whole." AR 26. The ALJ, however, did not cite to anything in the record supporting these conclusory reasons to dismiss Dr. Ferrie's opinion. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (stating that a treating physician's opinion is given controlling weight if well-supported and not inconsistent with other substantial evidence in the record).

This court has not found substantial evidence in the record to support the ALJ's conclusion that Dr. Ferrie's opinion is inconsistent with Arevalo's exam findings, treatment history, and the record as a whole. In fact, there is substantial evidence supporting Dr. Ferrie's opinion. *See* AR 410 (Dr. Ripperda noting Arevalo's EMG demonstrated chronic radiculopathy); AR 443 (MRI showing new disc protrusion); AR 447 (MRI in 2012 showing central and left paramedian disc protrusion at L5-S1 which appears to alter the left S1 root); AR 454 (Dr. Ferrie noting Arevalo's pain "has gotten a lot worse"); AR 456 (Dr.

14

Ferrie noting "MRI shows a small paramedian disk protrusion"); AR 536 (Dr. Ferrie noting Arevalo has "evidence of recurrence" and suffers from "constant daily pain"); AR 540 (Dr. Ferrie's impression notes stating that Arevalo's degenerative disc disease has "significant residual pain," Arevalo cannot mow his lawn, and Arevalo is in pain when he sits, lies down, and walks).

These are only part of the medical records that related to Arevalo's back pain. Arevalo was prescribed numerous pain medications, was advised to be cautious in taking narcotics, attempted physical therapy, and had at least one cortisone shot, yet he still continued to receive medical care for his back pain almost monthly for several years. This evidence in the record is consistent with Dr. Ferrie's MSS conclusions that Arevalo has marked restrictions of ADLs and social functioning, and his back surgery gave Arevalo "limited improvement." *See* AR 450-453. Thus, in light of evidence substantiating Dr. Ferrie's opinion, the court finds that the ALJ has not provided "good reasons" to give little weight to the opinion of Arevalo's treating physician.

The ALJ gave the opinions of the state agency physicians, Dr. Burkhart and Dr. Whittle, "great weight" because they "were rendered after a thorough review of the record, and are consistent with the record as a whole." AR 26. It is proper for an ALJ to determine a claimant's disability by weighing the opinions of medical providers. But non-treating physicians' assessments "alone cannot be considered substantial evidence [to support the ALJ's RFC finding] in the face of the conflicting assessment of a treating physician." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citing *Henderson v. Sullivan*, 930 F.2d 19, 21

(8th Cir. 1991)). Thus, the ALJ erred in relying solely on the state agency physicians' opinions in determining Arevalo's RFC after giving little weight to the conflicting assessment of his treating physician, Dr. Ferrie.

### B. Dr. Vanderpol's Opinion

Arevalo also argues the ALJ improperly gave the opinion of Dr. Vanderpol, a consultative examining physician, little weight. Docket 14 at 22. The Commissioner maintains that the ALJ provided a sufficient rationale for giving Dr. Vanderpol's opinion little weight. Docket 15 at 10. In her examination, Dr. Vanderpol noted that Arevalo had diminished muscle strength in his lower extremities, moved very stiffly, has affected gait, could not kneel at all, and has limited bending at the waist, among other findings. AR 400-402. But the ALJ stated that Dr. Vanderpol's opinion is "only marginally consistent" with Arevalo's exam findings. AR 25.

Even if a consulting physician examines a claimant once, that physician's opinion alone is generally not considered substantial evidence. *Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001). Based on the evidence in the record, Dr. Vanderpol's opinion does not appear to be inconsistent with Dr. Ferrie's opinion. In light of the court's determination that the ALJ should reexamine how much weight to give to Dr. Ferrie's opinion, Arevalo's treating physician, the ALJ is also instructed to consider the consistency between the opinions of Dr. Vanderpol and Dr. Ferrie when deciding how much weight to give to Dr. Vanderpol's opinion on remand.

## C. Failure to Address Non-Severe Impairments in RFC

The RFC determination must be based on the limitations from all medically determinable impairments, both severe and non-severe. SSR 96-8p, 1996 WL 374184 at *5 (July 2, 1996). Arevalo argues that the ALJ erred because there was no discussion of Arevalo's non-severe impairments in the ALJ's RFC analysis. Docket 14 at 24. In response, the Commissioner notes that the ALJ "stated at the beginning of her RFC determination that she made her finding after carefully considering the entire record, which necessarily included the evidence addressing Plaintiff's nonsevere impairments." Docket 15 at 13. The Commissioner further argues any alleged error is not harmful because plaintiff has not established how the inclusion of his non-severe impairments in the RFC determination would create additional limitations. *Id.*

To assess a claimant's RFC, "the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments." SSR 96-8p, at *2. At step two, the ALJ in this case found that Arevalo's left ankle degenerative changes, cervical spine osteophytes at C4-5, C5-6, C6-7, and depression are non-severe medically determinable impairments. AR 21-22.

"While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." SSR 96-8p, at *5. Further, an ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each

17

conclusion, citing specific medical facts . . . and nonmedical evidence . . . ." *Id.* at *7.

The court is hesitant to accept the Commissioner's argument that a blanket statement noting the ALJ's "careful consideration of the entire record" is enough to survive review. As the Social Security Ruling 96-8p points out, considering a claimant's non-severe impairments may be "critical" in determining the outcome. While the ALJ spent considerable time in her analysis discussing various pieces of evidence, these all pertained to Arevalo's severe medical impairment. The ALJ did not mention how the non-severe impairments factored into her RFC analysis. While "an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[,]" *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998), the Eighth Circuit has still remanded an issue "for reconsideration and clarification" when "coupled with other 'errors and uncertainties in the opinion.' " *Nowling v. Colvin,* 813 F.3d 1110, 1121 (8th Cir. 2016) (quoting *Willcockson v. Astrue,* 540 F.3d 878, 880 (8th Cir. 2008)). Thus, because the ALJ is instructed to reexamine the medical opinions and evidence to determine Arevalo's RFC on remand, the ALJ should also reconsider and explain how Arevalo's non-severe impairments factor into the RFC analysis.

## III. Arevalo's Credibility

Arevalo next argues that the ALJ failed to analyze Arevalo's subjective complaints under a proper *Polaski* analysis and the ALJ never explained what statements were or were not credible and why. Docket 14 at 28. In response,

the Commissioner maintains that the ALJ found the evidence did not support the severity of symptoms and limitations alleged by Arevalo. Docket 15 at 17.

Before the ALJ can make a determination on a claimant's RFC, "the ALJ must determine the applicant's credibility, as his subjective complaints play a role in assessing his RFC." *Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001)). "[W]hen evaluating a claimant's credibility, in addition to considering the absence of objective medical evidence to support complaints of pain, an ALJ should consider a claimant's reported daily activities, the duration, frequency and intensity of his or her pain, precipitating and aggravating factors, medication, and functional restrictions." *Steed v. Astrue*, 524 F.3d 872, 875 n.4 (8th Cir. 2008) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)); *see* 20 C.F.R. § 404.1529(c)(3). "The ALJ is not required to discuss methodically each *Polaski* consideration, so long as [the ALJ] acknowledged and examined those considerations before discounting [the claimant's] subjective complaints." *Steed*, 524 F.3d at 876 (internal quotation omitted). An ALJ's credibility determination is entitled to deference because the ALJ is in a better position than a reviewing court to gauge credibility. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

Because the ALJ is instructed to further analyze Arevalo's RFC consistent with this opinion, the ALJ's credibility determination may change in light of possible new RFC findings. Thus, this court will not address whether the ALJ erred in her credibility determination.

Because the court remands this case for further review, it declines to address the remaining issue raised by Arevalo, which addresses step five of the disability analysis. In light of the possibility that the ALJ's RFC analysis may change, it is inappropriate to render judgment on the ALJ's analysis pertaining to step five. On remand, the court instructs the ALJ to review the medical evidence in its entirety and to make new findings throughout the disability analysis. In making this decision, the court denies Arevalo's request that the court award benefits without remanding the case for further review.

## CONCLUSION AND ORDER

The court finds that the ALJ erred by failing to provide a thorough analysis explaining how Arevalo's degenerative disc disease did not meet all of the requirements in Listing 1.04, Subsection A. The court further finds that the ALJ failed to properly consider the medical evidence in the record when determining Arevalo's RFC. Thus,

IT IS ORDERED that the decision of the Commissioner is REVERSED and REMANDED for further review.

DATED this 30th day of January, 2018.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE